The next matter, number 24-1283, Alicia Lowe et al. v. Sarah Gagne-Holmes et al. At this time, would counsels for the appellants Lowe and all please introduce themselves on the record to begin? Good morning, Your Honors. Daniel Schmid on behalf of the appellants, and I'd like to reserve three minutes for rebuttal. You may. May it please the Court again, Daniel Schmid on behalf of the appellant healthcare workers. I respectfully request that this Court reverse the District Court for three reasons. First, plaintiffs lodged a plausible challenge to both the rule and the statute that created the system of the religious discrimination in the compulsory vaccination scheme. Second, even after the repeal of the rule, the exceptions to mootness apply. And third, should the Court find neither one of those are true, the remedy should have been plaintiffs given the chance to amend. And for those reasons, this Court should revert. First, for three years now, every court to have addressed the issue and every party to the proceeding treated plaintiffs' challenge as a combined challenge to the rule and the statute. As Your Honor, Judge Lynch wrote in the motion to dismiss appeal last year, the mandate is, quote, the product of both the rule and the statute. You can't have a regulation without some sort of statute authorizing it. But the statute itself is general. It is not COVID-specific. And your attack was on the regulation, which was COVID-specific, during its lifetime. Are we agreed on that? So, obliquely, yes, there was, on the way you framed the case, an assertion that the regulation, even if authorized by the statute, was unconstitutional. But I don't understand you to have launched a facial attack against a statute which, by its terms, doesn't mandate the regulation. I think we're tracking to some degree, but I think because of the combined nature of them, as the District Court said, they operated tandem. And as Your Honor wrote, it's the combination of two. So what happens when one goes away? Well, I think, for sure, the rule crystallized the injury for the plaintiffs in this matter. There's no question about that. The imposition of the COVID-19 vaccination requirement was what crystallized their injury. But the primary offender, under the First Amendment challenge, is the statute, because it is the statute. And all of their employers in the state all point to it. You're not asserting any claim to any other application of this statute than this particular one. You never did in this lawsuit. But, respectfully, Your Honor, we did challenge the system. Does your argument really depend on this? I'm sorry, I didn't mean to interrupt. I'm not quite sure why you're pressing this first point as opposed to addressing the mootness point. Well, I think they're interrelated, Your Honor. And I'll move on. Suppose the regulation had never been issued, okay? Could you have challenged the statute? I think they would have had standing to challenge the statute. Yes, Your Honor. Well, I think in a First Amendment facial challenge, sure. Because the existence of the statute as... The statute just authorizes something to be done. Nothing's happened. And prohibits the imposition of religious exemptions. In the health care scheme, there is an imposition. But they haven't done anything. They're not requiring anybody to do anything. You'd have a pretty large ripeness issue, which is presumably why you only challenged it after the regulation was issued. Now the regulation's gone. The question is, does that moot the case? You can continue to make the point that actually you challenged the statute if you'd like. But you seem to have other points that you might want to get to. We do. And even if this Court finds that we didn't challenge the statute, I think it's not moot for an entirely separate reason. Can you get to the mootness issue? Which is the voluntary cessation problem that the State has. For one, it was plainly a litigation tactic. The timing of the rescission of the mandate is pretty clear. On May 1, the Center for Medicaid Studies suggests that they're planning to repeal the mandate. And the State says that that was the reason that they went to look for evidence as to why they should keep their own mandate. May 4, this Court holds oral argument in this case in which there were significant questions as to the constitutionality of the mandate and whether plaintiffs had stated a plausible claim. May 25 is when this Court issues an opinion saying that the plaintiffs had stated a plausible claim and sending it back to probe their claims and discovery. And then, in the Beardsley Declaration, in the record below, she says at the end of May and the beginning of June, which perfectly coincides with the timing of this Court's decision saying no, plaintiffs had stated a claim and they can probe their claims and discovery, they say never mind. That's a litigation tactic that is timing driven. It's almost identical to what happened in the Ninth Circuit case of Health Freedom Defense Fund. We're 12 days after oral argument that went poorly for the Unified School District there. And the oral argument here went poorly to the point of, Your Honor, Judge Lynch saying, if you had read Supreme Court opinions, you probably wouldn't have filed your motion to dismiss. And it was right after all of that that the State says never mind. In the L.A. case, when did the CDC guidance come out in relation to when they pulled the plug? It was prior to. Much prior to. I don't recall. I think they, I actually don't recall at what point. Well, it was May when the CMS released their thing. And then the Ninth Circuit holds oral argument 12 days later. And they had held onto it for two and a half years, which is the same thing here. So the mandate had been on the books since August 21. All the health care workers who had not been vaccinated against COVID-19 were fired, including the plaintiffs here. All of them. Yet the State maintained the mandate all the way up until the point that this court said you can stay to claim against it. We have two points in time. There's the oral argument in the case and the ruling in the case. So there's what happens in the case itself, but there's also the CDC guidance. The CDC guidance changes, roughly speaking, in the similar time frame. I'm just asking, in the L.A. case, is there a similar relationship between the CDC timing and the timing of the argument? Does the argument happen well after the CDC guidance? I think it was well after. Okay. So that's the difference between the two cases. Here, one thought is, well, CDC is what's driving the train, not the argument. How do we know which of the two it is? It was they were considering the CDC guidance and trying to figure out when it was, which was just weeks before. I think that's drawing a plausible inference in the wrong direction. What plaintiffs put forward is that the timing is suspicious, and that's what the Ninth Circuit said. There is enough grounds, and under already we Nike and Trinity Lutheran v. Coleman. The burden is on the State to prove that it wasn't litigation-driven. And it's a formidable burden to suggest that it wasn't a litigation-driven tactic. Here we have the timing. Don't they have a declaration saying that it was driven by the CDC? That's the Beardsley Declaration, yes. But if you look at that, and then we couple the litigation timing with what the evidence on the ground actually was. Well, the evidence on the ground is that the timing of that decision is coincident with the CDC. It happens to also be coincident with the argument. But they have represented in the declaration undisputed that actually it was the CDC. It might be harder if that had happened a year before or something like that. But since it's within a reasonable time frame of the decision, what is our ground for disbelieving the Beardsley Declaration? Well, I think there's two points. One, the timing is suspicious, and there's a reasonable inference that plaintiffs are entitled to under that scenario. Two, when you look at it, because what the Beardsley Declaration says is not we're revoking it now because the CMS rule is gone. It says we're going to consider it in light of the evidence. And that's what she says. And what was the evidence on the ground at the time? There was from the month before, which was July, when they said we're going to propose it. Mind you, it was another month and a half later where they said we're going to propose it. I understand what you're saying, that it was going up. But isn't the relevant thing is compared to the state of COVID at that time compared to the state of it when they instituted the mandate? And by then, the numbers look very different and the knowledge base is very different, just as it seems like what the state was doing or the employer is doing. True enough. But the problem here is that the reasonable inference when you couple the timing problem with the fact that there was a 40 percent increase in hospitalizations the very month they were claiming that the evidence supported a rescission and 167 percent increase in deaths. And they said the evidence now supports, even though we've held on to it for two and a half years, that the evidence now supports we get rid of the mandate. At the same time, the number is spiking. The reasonable inference for plaintiffs is that that's litigation-driven tactics. I understand why. The relevant comparator for the purpose of deciding whether to pull the plug is the state of the world post-CDC guidance compared to the state of the world at the time they implemented the mandate. So the fact that in the interim between the CDC guidance and the weeks when they decide to pull the plug, it's going up. It doesn't tell you anything about whether overall it makes sense to have the mandate still if the state of the world as to COVID is much less risky than it was when they imposed the mandate. Respectfully, Your Honor, I think that's making the same error that the district court did, which is to put the burden on plaintiffs to show that that's not what's true. I think a reasonable inference drawn in the plaintiff's favor is – They're just giving – they have a burden. They're now giving their explanation, and it tracks what their explanation is. I don't see why the evidence that there's an uptick of some sort in the weeks after the CDC guidance undermines their explanation. Their explanation is, oh, now that the CDC says don't do it, let's look back and see were our reasons for imposing this as good as they are now. No, they're not as good. What contradicts that? Respectfully, Your Honor, that's not what they said. Okay. After the CMS repeal, they said, okay, now we're going to consider it in light of the evidence that's taking place on the ground. Yeah. And the numbers on the ground don't support it, and they at least support a reasonable inference in plaintiff's favor. Does the evidence on the ground show that the state of the world as to risk from COVID was lower than it was at the time they instituted the regulation? I think that's too broad a generalization, respectfully, Your Honor, because the issue – and that's – in this particular regard, you have to look at what was the risk of the healthcare worker in the hospital, not the general population. No, no. Because the mandate was we have to – you must, as a healthcare worker, be vaccinated. That risk was gone in October 1 when all of our plaintiffs were fired. So – but they maintained the mandate all the way up until two and a half years later at the very point that this court says they stated a claim. The CMS guidance was different at that time, wasn't it? There was a mandate for – yes, there was a CMS mandate in place. Now there isn't. It didn't – So now they're going to see, gee, let's look at what the evidence is. Oh, I guess there was a basis for the CMS to change its mind. You're not saying that there was no basis for CMS to change its mind? No, but I'm also not challenging the CMS mandate. I'm challenging the state's mandate that stayed in place for two and a half years until this court said plaintiffs had stated a claim, and at that point we're going to look at the evidence, and the evidence didn't support it. And in all of this, too, Your Honor – I just want to make sure you get to your third. And respectfully, the – at minimum, plaintiffs should have been given leave at least one chance to amend their complaint. They were never given one chance. May I conclude briefly? Yes, sir. They were never given one chance. There was one amendment here on the record, and the only reason that they were required to amend, because there was a challenge to proceeding under a pseudonym. Here, the plaintiffs put forward a statement to the district court saying, if we could just amend one time and clarify, because the district court's sole basis was that you weren't challenging the statute. And if we had added three simple words and the statute to the definition of the mandate, I think a plausible facial challenge – But why would that have made any difference? We're back to point one. All the statute did was authorize agencies to promulgate certain regulations. Why would adding three words – it's also inconsistent with your first argument. Your first argument is we essentially said those three words. It is a little inconsistent, but the only reason that we say – and the only reason for that inconsistency is we say we didn't need to amend – District court ruling is not based on the absence of those three words. Do you have any other reason why you think it was error not to allow you to amend, other than adding the three words? Well, I think it would have clarified the broader challenge, and to some degree – You said that. I disagree a little bit, if I may, Your Honor, with the point that all it is is an authorizing regulation. It's a creation of a scheme that prohibits – once you impose a mandate, you cannot have any religious accommodations. I think that scheme, by its very existence – If it authorizes it.  Just so I get it clear, do you think you could – suppose they never issued a regulation under the statute. Could the statute be challenged? I think so, because I think you can – under the First Amendment, you can challenge it. Who would have standing to challenge a statute that doesn't require anything? A health – well, there are certain ones in the scheme that health care workers are required to – that they were preexistent to COVID, and they weren't permitted to – there was a system that created a – I see. So you wanted to challenge the other vaccines. We certainly could. I see. And that was sort of clear enough in the complaint that you think a district court should have intuited, oh, I see, and then you should have had a chance just to clarify that actually you were challenging non-COVID vaccine requirements? I don't think that's a clarification, but I think they should be given the option to amend their complaint to suggest that perhaps those are. In this record, we have nothing to suggest that they have religious – The district court said you went along – if it wasn't just a clarification, you had gone on in your litigation an awfully long time talking only about COVID to two years later saying actually we're interested in non-COVID vaccines. That seems like the kind of thing we usually defer to a district court on, which is if you wanted to talk about non-COVID vaccines, you had plenty of time to make that known. We don't usually let people – we don't usually second-guess a district court saying, I'm not going to let you switch horses that late in the case. To be fair, it only arose at the point at which they repealed the mandate to cover the tracks of the statute at issue. I mean, that's the voluntary cessation and – No, it didn't. You didn't get to it, but the capable of repetition – Not as to the non-COVID vaccine. That was there all along and you didn't – your case wasn't about that. Okay. Do you have anything else? No, Your Honor. Thank you. Thank you, counsel. At this time, would counsel for the apologies please introduce himself on the record to begin? Good morning and may it please the court. Assistant Attorney General Kimberly Pat Worden on behalf of the state officials. I want to dive directly into the reasons why the state repealed the COVID vaccine requirement in September of 2023. There were significant change circumstances that occurred over the course of 2022 and 2023. If you look at Appendix 137 to 138, you can see the graphs that show the decline in hospitalizations and deaths from COVID-19 that occurred within the state. And those graphs show a long decline over the period of that particular timeframe going all the way out to August 2023, just right before the state formally repealed the COVID-19 vaccine requirement on September 5th. The hospitalizations and deaths really leveled off in the spring. When did the ruling come down adverse to you? It was May 25th, Your Honor. And the CMS guidance was when? The CMS... The change in the CMS guidance. The CMS withdrew its rule on June 5th, 2023. June 5th? That's correct, yes. On May 1st, they indicated that they would be repealing it. And the Beersley Declaration is in reference to that May 1st statement? I think it addresses both of those timeframes, Your Honor. It does talk about the announcement that it would be happening. It talks about on May 11th, 2023, the public health emergencies ended. But also the June 5th repeal was a substantive repeal. So the repeal doesn't actually occur until after our court has ruled adversely to you? That's correct. The CMS had announced that they would be doing that based on the end of the COVID-19 pandemic. What does the Beersley Declaration say about what the employer did following the repeal by CMS? I'm just trying to figure out... We have two things that are happening simultaneously. Yes. If all we had was you had a bad oral argument and you got a bad ruling and then you repealed it, there would be a fairly good case for saying it looks like it's a litigation tactic. The thing that makes it look like it's not a litigation tactic is if all we had was CMS says, we're thinking about changing this, now we've repealed it, then after a period of study you actually withdraw the rule in accordance with the new CMS guidance. It wouldn't look like a litigation tactic. We have both things happening simultaneously. So we have to figure out, does that mean we should treat it as a litigation tactic or not? So what do you have to say that tells me why I should focus on what CMS did and how you responded to CMS rather than what our court did and how you responded to our court? Well, it wasn't just what CMS did on June 5th. It was the end of the public health emergency on May 11th. There was consideration given to the end of the public health emergency and what that meant for the state's COVID-19 response. As part of that examination, the CDC and Maine DHHS examined the factual underpinnings of the rule. They made a decision to do that at the end of May of 2023, beginning of June. That does coincide with this court's decision, but it also coincides with the same time frame of the change in the CMS rule. The study that was done showed... You said May 23rd was the... why is that? I believe it was May 25th. I apologize. That's the date of our decision? I believe so, yes. Yes. So Maine CDC begins its earnest examination upon our decision coming out? The record is not that specific. It's around that time frame. It's the same date? No. The record says the end of May, beginning of June. I see. Yes. Around that same time frame when there was a series of other rapid regulatory changes that were happening from May 11th, the end of the public health emergencies on both the state and federal level, to June 5th, which is when CMS repealed its COVID vaccine requirement. That was the time frame in which the department and Maine CDC examined the factual underpinnings of the rule. And that review was directed at whether or not it was still necessary to have a COVID-19 vaccine requirement in the healthcare context. In Maine? That's correct. So one of the reasons for denial of the initial preliminary injunction had to do with the fact that Maine has relatively few healthcare providers. Access to healthcare is more difficult there than in many other areas. And Maine made an argument that all of these decisions have to be understood in the context of the provision of healthcare in Maine. So I assume that when you say the Maine CDC working with the federal CDC, at that point started looking at what was happening in Maine? I don't think it's fair that's when they started looking to see what happened in Maine. Obviously Maine CDC had been monitoring the COVID-19 pandemic throughout the pandemic. But the review of the factual underpinnings of the rule started in the end of May and the beginning of June of 2023. And that was focused on specific circumstances in Maine. And you can see these. And just so I get the trigger, according to the Beardsley Declaration or anything in the record, for starting at that time is what? The Beardsley Declaration says it was the end of the state and federal public health emergencies. And that occurred on what date? May 11th. I'm just sort of curious, why would they have waited until the end of May, beginning of June, to start that examination if May 11th, which is two weeks earlier, was the date? Unfortunately, state government doesn't always turn on a dime, Your Honor. There's also the Maine CDC and Maine DHHS are tasked with many other responsibilities. And there were other circumstances that they were addressing at the same time. With respect to the pandemic or something else? With respect to everything, Your Honor. Something was more pressing than this? No, I'm just indicating that the statutory responsibilities of Maine DHHS and CDC are not limited to response of the COVID-19 pandemic. Maine DHHS is responsible for Medicaid. This goes to the burden. The burden on mootness is on you, right? Correct. And so one thing that does happen at the end of May is our decision. Yes. So we're trying to see, is there anything that supports the notion in a strong enough way that what prompts the reconsideration of the rule is things extrinsic to our ruling on May 25th? Or is the record unclear enough on that point that we can't rule out that what was prompting it was our May 25th decision and therefore it is a litigation time? Other than the date of the decision, there is nothing in the record that supports that the decision to review the rule or change the rule was based on this Court's decision. For the voluntary... If I may ask a question. I think I've been hearing today that if the review was conducted, the evidence would be that there is an increase in something, either hospitalizations or deaths or transmissions. I wasn't exactly sure what it is. But that the evidence would support a different conclusion than repeal of the rule. I thought that's what I heard from your brother today. And if that's true, I think we're being asked to conclude that the Department preferred to act recklessly for purposes of this litigation with respect to health. So what do you have to say about that? So that comparison was based on two months. In July of 2023, there were three Mainers who died of COVID-19. And in August of 23, there were eight Mainers who died of COVID-19. So yes, that is a 250% increase. But we're talking about single digits. What does the study say about that? Anything? Well, I think the correct comparison would be looking at the previous year for the same timeframe. In July of 2022, there were 33 Mainers who had died of COVID-19. And in August of 22, there were 62 Mainers who died of COVID-19. But again, the long tail or the long trend from the beginning of 2022 until August 2023 shows a decline over that entire timeframe. And that's the context that was evaluated by Maine CDC and DHHS. And that's supported by the Beardsley Declaration is the long, slow decline over that same time period. Just as a matter of law, your opponent has presented us with the proposition that since you have the burden, if any possible inference, even if you put on evidence that is really not disputable, as to a non-court-related reason, if any possible inference can be drawn from the timing, that is sufficient to call into question whether you have met your burden and would require dismissal. So this is sort of the interplay between the 12B6 plausibility standard and the moodiness burden. Is there any case law that you're aware of on this topic? I'm not aware of any case law specifically addressing that. I will say that the district court found that the repeal was based on reasons not related to the litigation. But it's a de novo question on this issue. I think that's a factual finding that the court made, that there was the change in the law or the repeal of the COVID-19 vaccine requirement was based on the evidence that was presented to the district court and the district court found that it was not a litigation tactic. So that is a difference from just a complaint gets filed and you have nothing else. Here you have an entire record. That's correct. Is that something that we review for clear error or is that de novo? I think that would be reviewed for clear error, Your Honor. Is that often jurisdictional facts we review de novo? Well, I think that the court made that finding. He compared the evidence that was presented by the State and the lack of evidence that was presented by the plaintiffs and found that it was not a litigation tactic. However, I will say for the voluntary cessation exception to mootness, if the court is skeptical of the litigation tactic, voluntary cessation also does not apply if the State has made it absolutely clear that the conduct cannot be reasonably expected to recur. The district court didn't rule on that basis, but this court could affirm on that alternate ground. And you can see throughout the Beardsley Declaration all of the reasons why the State repealed the COVID-19 vaccine requirement. The decrease in hospitalizations. The decreases in deaths. I take the point, how are we supposed to evaluate that? I take it, absent some reasonable probability of the COVID crisis approximating the level of crisis it was at when the rule was instituted, you would say there's nothing in the record that suggests there's a reasonable possibility of it being reinstituted. Is that right? Yes, that's exactly what that is. And so how do we assess how reasonably probable it is that the COVID crisis will get that bad again within some reasonable timeframe? Wouldn't that be what we'd have to assess in order to rule in your favor? In other words, if it looked like it was just about to come storming back, then there would be a reasonable probability you'd institute a rule again. You're not saying you wouldn't. You're just saying we wouldn't do it unless it was that bad again and it's not reasonably probable it would be that bad again. Well, that's not what we've said. In the Beardsley Declaration, and this is at 135, it says based on the available data that it's highly unlikely that the state will seek to reimpose the COVID-19 vaccine requirement. Based on the available data? So that suggests that when the available data shows it's as bad as when you had it before, you're not ruling out that if it was that bad you'd put it back in. Why would you rule that out? I think that the authority to issue a rule in the future does not preclude mootness. That's what this court held in Boston. That's not what I'm asking. I'm trying to figure out what reasonably probable means here. One possibility is you say we went through that process. We're never mandating vaccines again for COVID. I don't care how bad the crisis is. I'm not doing it again. You're not saying that. That's not supported by the record, no. So what seems to be on the record a fair conclusion is in the absence of the available data showing it's as bad as it was within some margin as when you instituted it, there's no reason to think you would impose it again. Right? I think the evidence shows that based on the circumstances that are present in September of 2023 and that are also present today, the state has not reinstituted a COVID-19 vaccine requirement. And no reason to think you will if it stays that way. There are amendations on this reasonable foreseeability. It isn't just the infection as bad, the infection rate. It's also what alternative treatments may have been developed by then. So it's not just a matter of will the conditions of earlier be repeated because the landscape may look very different. That is correct. The idea that it's just too many imponderables for it to be reasonably likely that it would come back. Is that the idea? There's a lot of speculation implicit in your question based on what might happen in the future, what the disease severity might be, how virulent it might be, how quickly it's spreading from person to person. Match that up with the legal test. And because of that, what? Because there are so many speculative inferences there, that it's not reasonably likely that all of those things are going to occur. And I think also based on the fact that the state has not moved to reinstitute the COVID vaccine requirement in the 15 months that it's repealed is another basis to affirm on the mootness grounds on the not reasonably likely. Thank you. Do you know whether there's anything in the record to suggest that at the time that this study was undertaken, there was consideration about amending the regulation as opposed to repealing it? Well, the regulation was amended in order to repeal the COVID-19 vaccine requirement. I'm sorry, modifying the regulation rather than repealing. In other words, the regulation might come back, but it might come back in a different form. Is that correct? Well, the regulation still exists. It's just that the COVID-19 requirement was struck from the regulation. Okay, the COVID-19 requirement. What's required? What's prohibited? If it comes back, it's going to take, you know today, if it comes back, it'll take exactly the same form? Or is it possible it'll take a different form? It's possible that it could take a different form. Could be more onerous? Could be less onerous? Yes. Thank you. Thank you, counsel. At this time, would counsel for the appellants please reintroduce himself back on the record? He has a three-minute rebuttal. Thank you, your honors. May it please the court, Daniel Schmidt again on behalf of the appellant. What I heard a lot in your discussion with my colleague is that there are two competing explanations for what the repeal was based upon and the reasons that led to it. What those two competing explanations are, the state put forward a declaration saying here's what we did. There are some reasonable inferences out there that suggest no, the timing was suspect and the evidence didn't support it. On a motion to dismiss. What do you mean the evidence didn't support it? This is a health agency. You're suggesting that if its repeal wasn't driven by the litigation, it would have proceeded to act what was in its view recklessly. I think that's an inference that can be drawn. I think it's a reasonable inference and I think plaintiffs are entitled to that. To go to Judge Lynch's question as when we're on a mutinous question versus a strict 12 v. 6 type dismissal question. There is authority from this court as to what it does. Under Ramirez v. Sanchez-Ramos it's this court's decision in 2006. Even on a mutinous determination, you take all the factual allegations as true and you draw all reasonable inferences even concerning the mutinous question in plaintiff's favor. Here, plaintiffs were never given the opportunity to probe and discover. A lot of your Honor, Judge Barron's questions look like great deposition questions. Well, what was the basis for that? What was the reason that led to it? Was it the CMS mandate or is there a memo out there that says, hey, we have a problem here from the First Circuit. We can repeal the mandate. Those are all evidentiary questions. They're factual questions that are inappropriate for resolution on a motion to dismiss. Plaintiffs were never given the opportunity to probe those claims and discover. The district court faulted them for not putting forward a declaration or discovery or anything else on the mutinous question which was flipping the burden on the plaintiffs. Did you say, court, defer any ruling on this and let us depose the decision makers? That was the entire... No, no. Did you, at any point, once they moved, well, even before they moved to dismiss, ask to take discovery of the decision makers? I think the answer is no, but now, after dismissal, you are saying, well, we should have been given the opportunity, but we didn't even ask for it. Well, we had... Plaintiffs had propounded discovery in the district court after the district court sent us back down. No, no, not on the mutinous issue. Not on the mutinous issue, but it was... Did you ask for discovery on mutinous? No, but I think the problem with that... So what is the significance, then, of the fact that you're now saying you could have? It demonstrates the point that plaintiffs were never given the opportunity to answer the factual questions. What does that mean to say you weren't given the opportunity? You didn't ask for any opportunity. You could have asked. You didn't ask. So how were you not given the opportunity? Respectfully, Judge Barron, I think that's still flipping the burden on the plaintiffs to say you didn't ask for discovery to prove a burden you didn't have. Well, that's fine if you want to... I understand that point, which is that you just say, on this record, I guess is the contention, you simply cannot have made the determination that you lose. Correct. And that's the reason... What I'm saying is that there were two competing... So just so I understand, with respect to the question of the district court found, and I put that in quotes because I'm not sure we should count it as a finding rather than a legal conclusion, but found that the reason for it was not litigation-based, it was the opposite. I take it you say that's not a factual finding to which we owe deference? No. The question of whether a claim is moved is a legal question. I don't think it's factual. I understand, but the predicate fact of what was in the mind of the decision maker they're contending is a factual question on which we have a factual finding, not the ultimate mootness of question. And my question for you is, is there any case law on whether that is a factual finding or not? Respectfully, I would suggest there's a problem either way. If it is a factual finding, it's a factual finding that went against the allegations of the complaint and the reasonable inferences to be drawn there from, and that's reversible error. So if you consider it a finding of that... Clear error, you would say? Even clearer, yes, because the problem with that would have been that the plaintiffs put forward, sure, there's a declaration in the record that contradicts what the allegations of the complaint are and contradicts what plaintiffs put forward as reasonable inferences to which they were entitled, and the district court did not give them those inferences on a factual or the legal conclusions regarding mootness, and this court should reverse for those reasons and allow plaintiffs their day in court. Could you address the alternative ground that's been given for affirming the district court, which is that on this record there's no reason to think it's reasonably probable that the mandate would be reinstituted? I think that looks a lot like the conversation we were just having, which is that a lot of those things and the justifications the State just put forward are all a lot of factual findings to which there are a lot of questions that reasonable inferences drawing the other way could suggest alternatively. What suggests it would be reinstituted? Well, for one, let's take the Beardsley Declaration, and my colleague stood at this podium and Your Honor asked her to put her factual discussion in the context of the standard, and what was the standard we heard, and it's the same standard that was articulated in the Beardsley Declaration. It's highly unlikely that we'll reinstitute it. That's not the standard. Under Trinity Lutheran v. Comer, and already v. Nike and the other decisions on voluntary cessation, the standard is, is it absolutely certain that it's not likely to recur? And highly unlikely based on... And the question is... Absolutely certain that it's not likely. I mean, what does that mean? The state has to make it absolutely clear. They're saying it's absolutely certain it's not likely. I mean, aren't they? They're not saying it's absolutely certain it'll never happen. They're saying it's absolutely certain it's not likely because there's so many imponderables about the conditions that would have to be in place before it would be imposed. And I think all of those are factual questions. Can you... Is there anything in the record that suggests they're not imponderable? No, and that's the problem because we never got to discovery on the issues. Plaintiff stated a plausible claim they could have put forward. Yeah, you also didn't ask for discovery on that point. Okay, anything else? No, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.